IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CLINTON G. BRAGG, JR., individually and on behalf of the heirs at law of decedent, CLINTON G. BRAGG, III, and as co-administrator of the estate of CLINTON G. BRAGG, III, deceased, and PATTI TUCK, individually and on behalf of the heirs at law of decedent, CLINTON G. BRAGG, III, and as co-administrator of the estate of CLINTON G. BRAGG, III, deceased, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| v. | ) ) | No. 21-2047-KHV |
| BIG HEART PET BRANDS, INC., ESIS, INC., INDEMNITY INSURANCE COMPANY OF NORTH AMERICA and GALLAGHER BASSETT SERVICES, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER

In the District Court of Douglas County, Kansas, Clinton G. Bragg, Jr. and Patti Tuck, the parents and surviving heirs of decedent, Clinton G. Bragg, III ("Bragg"), and co-administrators of his estate, filed suit against Big Heart Pet Brands, Inc., ESIS, Inc., Indemnity Insurance Company of North America ("IINA") and Gallagher Bassett Services, Inc. Plaintiffs allege that after Bragg suffered a workplace injury, defendants delayed or denied authorization for medical treatment, causing pain and suffering and eventually his death. Plaintiffs assert claims of negligence, negligence per se and bad faith refusal to timely authorize medical treatment. On January 29, 2021, Gallagher Bassett removed the action to this Court.[1] This matter is before the Court on

---

[1]     Shortly after Gallagher Basset removed the action, the Court sustained the parties' joint motion to dismiss ESIS, Inc. Order (Doc. #37) filed May 4, 2021.

<u>Defendant Gallagher Bassett Services, Inc.'s Motion To Dismiss</u> (Doc. #6) filed February 5, 2021;

<u>Defendant Indemnity Insurance Company Of North America's Motion To Dismiss</u> (Doc. #18)

filed February 24, 2021; <u>Big Heart Pet Brands, Inc.'s [] Motion To Dismiss</u> (Doc. #22) filed

March 11, 2021; and <u>Defendants Indemnity Insurance Company Of North America And Gallagher</u>

<u>Bassett Services, Inc.'s Motion For Leave To File Supplemental Memorandum In Support Of</u>

<u>Their Motion To Dismiss Or In The Alternative To File Notice Of Supplemental Authority</u> (Doc.

#53) filed August 23, 2021.  For reasons stated below, the Court sustains defendants' motions to

dismiss and overrules defendants' motion to file a supplemental memorandum.

## <u>Legal Standards</u>

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as

true all well-pleaded factual allegations and determines whether they plausibly give rise to an

entitlement to relief.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).  To survive a motion to dismiss,

a complaint must contain sufficient factual matter to state a claim which is plausible—not merely

conceivable—on its face.  <u>Id.</u> at 679–80; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

To determine whether a complaint states a plausible claim for relief, the Court draws on its judicial

experience and common sense.  <u>Iqbal</u>, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions.

<u>See</u> <u>id.</u> at 678.  Plaintiffs make a facially plausible claim when they plead factual content from

which the Court can reasonably infer that defendants are liable for the misconduct alleged.  <u>Id.</u>

However, plaintiffs must show more than a sheer possibility that defendants have acted

unlawfully—it is not enough to plead facts that are "merely consistent with" defendants' liability.

<u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).  A pleading which offers labels and conclusions, a

formulaic recitation of the elements of a cause of action, or naked assertions devoid of further

factual enhancement will not stand.  Id.  Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not "shown"—that the pleaders are entitled to relief.  Id. at 679.  The degree of specificity necessary to establish plausibility and fair notice depends on context; what constitutes fair notice under Fed. R. Civ. P. 8(a)(2) depends on the type of case.  Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

## Factual Background

Plaintiffs' complaint alleges as follows:

Plaintiffs are the parents and surviving heirs of decedent, Clinton G. Bragg, III, and are co-administrators of his estate.  Big Heart employed Bragg.  On March 27, 2017, Bragg suffered injuries during the course and in the scope of his employment.  He suffered multiple disc herniations in his neck with radicular symptoms.

Bragg received treatment for his workplace injury from Big Heart under the Kansas Worker's Compensation Act ("KWCA"), K.S.A. § 44-501 et seq.  IINA provides workers compensation insurance coverage to Big Heart.  IINA contracted with a third party administrator, Gallagher Bassett, to adjust its obligations to provide benefits that Big Heart owed Bragg under the KWCA.

On March 27, 2017, Big Heart had Bragg see Dr. Chris Fevurly, who referred him to Dr. David Fritz, a neurosurgeon and spinal specialist.  Big Heart authorized Dr. Fritz to treat Bragg.  Dr. Fritz concluded that conservative treatment—rather than surgery—was the best option.  On December 4, 2017, Dr. Fevurly issued an impairment rating for Bragg and reported that he would likely require continued treatment, including epidurals.  Based on Dr. Fevurly's impairment rating, Bragg received an offer to settle his worker's compensation claim, which he declined.  Between

December 4, 2017 and May 9, 2018, Bragg received various forms of conservative treatment.

On July 13, 2018, Bragg returned to Dr. Fevurly, complaining that he was experiencing radiculopathy from his neck into his left arm.  Dr. Fevurly referred Bragg back to Dr. Fritz and ordered an additional MRI.  Big Heart did not approve the referral to Dr. Fritz but approved the MRI.  An MRI on August 16, 2018 revealed that Bragg had an extruded disc at the C6-C7 level with severe nerve encroachment.  On September 10, 2018, after Dr. Fevurly reviewed the MRI, he prescribed narcotic pain medication to Bragg and referred him back to Dr. Fritz.  Dr. Fritz was available to see Bragg within two weeks of September 10, 2018.  Even so, Big Heart did not authorize Dr. Fritz to examine Bragg.  Instead, Big Heart informed counsel for Bragg that it would schedule him for the earliest available appointment with either Dr. Adrian Jackson or Dr. Alexander Bailey.  Counsel for Bragg asked Big Heart to reconsider authorizing Dr. Fritz, noting that Big Heart had previously authorized him and that he was able to see Bragg within two weeks.  Even so, Big Heart continued to withhold authorization for Dr. Fritz.

Because of the pain from his workplace injury, Bragg also had mental health problems.  On multiple occasions after September 10, 2018, Bragg informed Big Heart and IINA about these mental health problems.  On September 14, Gallagher Bassett contacted Dr. Bailey, an orthopedic surgeon who specializes in neck and back surgery, to see if he could examine Bragg.  Gallagher Bassett informed Dr. Bailey that the treating doctor had recommended a surgical consultation for Bragg.  On September 17, Dr. Bailey's office asked to review Bragg's medical records.

On September 25, 2018, at a Kansas Department of Labor Workers Compensation Seminar, Dr. Bailey presented and cautioned attendees not to place individuals on narcotics for more than two weeks.

Bragg requested that Big Heart authorize a surgical consultation with Dr. Fritz.  A Kansas

worker's compensation administrative law judge ("ALJ") scheduled a preliminary hearing on this issue for October 4, 2018.  Big Heart then notified counsel for Bragg that Dr. Bailey had agreed to examine Bragg on October 25, 2018, approximately one month after Dr. Fritz would have been able to see Bragg.  After counsel for Bragg learned of the scheduled appointment with Dr. Bailey, she cancelled the hearing before the ALJ.

On October 25, 2018, Dr. Bailey examined Bragg.  Dr. Bailey prescribed Oxycodone for pain and recommended surgery.  Dr. Bailey asked Big Heart to authorize him to perform surgery. On October 27, 2018, Dr. Bailey issued work restrictions for Bragg, including light work and a limitation of 40 hours per week and eight hours per day.

Under the KWCA, counsel for Bragg filed a request for an order authorizing surgery and a preliminary hearing on the request.  In late November of 2018, IINA authorized surgery for Bragg and scheduled Dr. Bailey to perform it on January 7, 2019.[2]

In December of 2018, Bragg had difficulty working due to severe pain.  On December 19, emergency personnel found plaintiff unresponsive and transported him to a hospital.  Two days later, on December 21, 2018, Bragg died.  His death certificate listed probable acute opiate intoxication as the cause of death and referenced positive test results for opiates, amphetamines and alcohol.

On December 18, 2020, in the District Court of Douglas County, Kansas, plaintiffs filed a petition against defendants.  Plaintiffs allege that after Bragg suffered a workplace injury,

---

[2]     The complaint does not allege whether Bragg's request under the KWCA included a request for a specific healthcare provider to perform the surgery or a specific date for the surgery. Even so, in their opposition brief, plaintiffs concede that the reason for a preliminary hearing on Bragg's request was resolved when IINA authorized the surgery with Dr. Bailey for January 7, 2019.  See Plaintiffs' Memorandum In Response To Defendant, Big Heart Pet Brands, Inc.'s Motion To Dismiss (Doc. #26) filed March 26, 2021 at 19.

defendants delayed or denied authorization for medical treatment, which led to further pain and suffering and eventually death.  As administrators of Bragg's estate and heirs of Bragg,[3] plaintiffs assert claims against Big Heart, IINA and Gallagher Bassett for negligence.  In addition, plaintiffs assert claims against Big Heart for negligence per se based on violation of the KWCA and against IINA for bad faith refusal to timely authorize medical treatment.

On January 29, 2021, Gallagher Bassett removed the action to this Court.  All defendants ask the Court to dismiss the action.

## Analysis

### I.      Failure To State Claim

A federal court sitting in diversity applies federal procedural law and the substantive law that the forum state would apply.  Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 417 (2010) (Stevens, J., concurring); Burnham v. Humphrey Hosp. Reit Trust, Inc., 403 F.3d 709, 712 (10th Cir. 2005).  Plaintiffs argue that because they originally filed this action in state court, the Court should apply Kansas procedural law.  Plaintiffs' Memorandum In Response To Defendant, Big Heart Pet Brands, Inc.'s Motion To Dismiss (Doc. #26) at 22; Plaintiffs'

---

[3]      The administrator of a decedent's estate may bring suit for decedent's injuries before death, i.e. a survival action.  See K.S.A. §§ 60–1801, 60–1802.  Heirs of the decedent may bring a wrongful death action for loss suffered by all heirs after decedent's death.  See K.S.A. §§ 60–1901(a), 60-1902.  Here, plaintiffs have styled their survival and wrongful death claims as independent claims for relief.  Even so, survival claims under K.S.A. § 60-1801 and wrongful death claims under K.S.A. § 60-1901 are not "distinct legal bas[e]s for imposing liability."  Estate of Randolph v. City of Wichita, 57 Kan. App. 2d 686, 715, 459 P.3d 802, 823 (2020), review denied (Aug. 31, 2020).  Instead, they are simply "procedural mechanisms for recovering damages based on otherwise actionable injuries" to decedent.  Id.; see Flagg v. Loy, 241 Kan. 216, 217, 734 P.2d 1183, 1185 (1987) (K.S.A. § 60-1901 "creates no new cause of action for . . . heirs"); Bonura v. Sifers, 39 Kan. App. 2d 617, 629, 181 P.3d 1277, 1285 (2008) (K.S.A. § 60-1801 is saving statute that preserves "cause of action for personal injury to a person" upon death of that person).  Therefore, the Court construes plaintiffs' petition as asserting three claims under the survival and wrongful death statutes: negligence against all defendants, negligence per se against Big Heart and bad faith refusal to timely authorize medical treatment against IINA.

Memorandum In Response To Defendant, [IINA's] Motion To Dismiss (Doc. #25) filed March 17, 2021 at 22; Plaintiffs' Memorandum In Response To Defendant, Gallagher Bassett Services, Inc.'s Motion To Dismiss (Doc. #20) filed February 26, 2021 at 21.  Even in removed actions, however, federal procedural law controls.[4]  See Fed. R. Civ. P. 81(c)(1) (Federal Rules of Civil Procedure apply to civil action removed from state court); see also Pena v. City of Rio Grande City, 879 F.3d 613, 617 (5th Cir. 2018) (upon removal, federal pleading standards control).  Accordingly, to determine whether plaintiffs have sufficiently stated a claim, the Court applies the standards set forth above under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

All defendants argue that the complaint fails to state a claim for negligence because (1) the KWCA was and is plaintiffs' exclusive remedy and (2) the complaint fails to allege that defendants owed Bragg a duty of care.  IINA also argues that plaintiff has not stated a claim for bad faith refusal to provide medical treatment.

A.     Exclusive Remedy Provision Of KWCA

Defendants argue that the KWCA bars plaintiffs' negligence claim because it provides the exclusive remedy for negligence claims arising out of a workplace injury or subsequent treatment for such an injury.  See Defendant Gallagher Bassett Services, Inc.'s Memorandum In Support Of Motion To Dismiss (Doc. #7) filed February 5, 2021 at 8–10, Defendant Indemnity Insurance Company Of North America's Memorandum In Support Of Motion To Dismiss (Doc. #19) filed February 24, 2021 at 8–11, Big Heart Pet Brands, Inc.'s Brief In Support Of Motion To Dismiss

---

[4]     Plaintiffs cite no authority for the proposition that in removed actions, a federal court should follow state procedural law.  Likewise, they do not assert that Rule 12(b)(6) abridges, enlarges or modifies any *substantive* right under Kansas law.  28 U.S.C. § 2072(b) (federal rules "shall not abridge, enlarge or modify any substantive right"); see Shady Grove, 559 U.S. at 407 (validity of federal rule depends entirely upon whether it regulates procedure—if it governs only "the manner and the means" by which litigants enforce rights, it is valid; if it alters "rules of decision" by which court will adjudicate those rights, it is not).

-7-

(Doc. #23) filed March 11, 2021 at 8–11.  Plaintiffs respond that that they and Bragg could not have recovered under the KWCA for the injuries alleged in this action because defendants' negligence for delayed and denied medical treatment "occurred outside of the workplace, months after his initial injury, and gradually worsened over time."  Plaintiffs' Memorandum In Response To Defendant, Big Heart Pet Brands, Inc.'s Motion To Dismiss (Doc. #26) at 18–19.

The KWCA provides an exclusive remedy for an employee who is injured while performing work for his employer if "compensation is recoverable" under the statute.  See K.S.A. § 44-501b(d) (2020) ("Except as provided in the [KWCA], no employer, or other employee of such employer, shall be liable for any injury, whether by accident, repetitive trauma, or occupational disease, for which compensation is recoverable under the [KWCA] . . . .").  Thus, an injured worker cannot maintain a common law negligence claim against his or her employer if the worker can recover benefits from the employer under the KWCA.  See Bright v. Cargill, Inc., 251 Kan. 387, 392–93, 837 P.2d 348, 354 (1992); Endres v. Young, 55 Kan. App. 2d 497, 499–500, 419 P.3d 40, 43 (2018).

Initially, the Court addresses whether absent an employment relationship with Bragg, IINA or Gallagher Bassett can invoke the exclusive remedy provision.  On its face, the exclusive remedy provision only covers claims against the "employer" or "other employees of such employer." K.S.A. § 44-501(d); see Zehring v. Wickham, 232 Kan. 704, 706, 658 P.2d 1004, 1006 (1983) (if worker can recover benefits for "injury from *an employer* pursuant to [KWCA], he cannot maintain a common-law negligence action for damages against *that employer*") (emphasis added). IINA and Gallagher Bassett have not explained why the exclusive remedy provision applies to insurance carriers or third-party administrators, or cited any authority to support such an expansion of the statute.  The Court therefore addresses the exclusive remedy provision only as it applies to

Bragg's employer, Big Heart.[5]  See Zehring, 232 Kan. at 706, 658 P.2d at 1006.

The exclusive remedy provision is an affirmative defense on which Big Heart bears the burden of proof.  See Radil v. Sanborn W. Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004) (under Colorado law, defendant bears burden of proving affirmative defense based on exclusive remedy provision); see also Selle v. Boeing Co., 17 Kan. App. 2d 543, 544, 840 P.2d 542, 542 (1992) (defendants raised exclusive remedy provision as affirmative defense).  On a motion to dismiss, Big Heart must show that as a matter of law, based on the face of the complaint, the exclusive remedy provision bars plaintiffs' claims.  See Logue v. Layne Inliner, LLC, No. 17-1245-EFM, 2018 WL 2971746, at *2 (D. Kan. June 12, 2018) (defendant must show facts alleged in complaint compel application of exclusivity defense as matter of law).

To establish that the KWCA exclusive remedy provision bars plaintiffs' claims, Big Heart must show that the complaint establishes that plaintiffs' alleged injuries are "recoverable" under the KWCA—that is, that Bragg could have recovered benefits for the alleged injuries from Big Heart under the KWCA.  Id.  Big Heart is not required to show that Bragg or plaintiffs actually recovered KWCA benefits for their alleged injuries.  Id.; see Robinett v. Haskell Co., 270 Kan. 95, 97, 12 P.3d 411, 414 (2000) (worker may not maintain common-law negligence action against party from whom he "could have recovered compensation" under KWCA).

The Court liberally construes the KWCA to bring employees and employers within its provisions "whether or not desirable for the specific individual's circumstances."  Bright, 251 Kan. at 393, 837 P.2d at 1006; see K.S.A. § 44–501b(a).  To establish that plaintiffs could have

---

[5]      IINA and Gallagher Bassett filed a motion to file a supplemental brief related to their defense that the KWCA exclusive remedy provision bars plaintiffs' claims for treatment of a workplace injury.  Because IINA and Gallagher Bassett have not addressed how the exclusive remedy provision can be extended to non-employers, the Court overrules defendants' motion for leave to file a supplemental brief on this defense.

recovered KWCA benefits, Big Heart must show that (1) an employer-employee relationship existed between it and Bragg; (2) the alleged injury occurred "in the course of employment;" and (3) the alleged injury "arises out of employment." Logue, 2018 WL 2971746, at *2. Under the third element, an injury by accident "arises out of employment" only if (1) a causal connection exists "between the conditions under which the work is required to be performed and the resulting accident," and (2) the accident is "the prevailing factor causing the injury, medical condition, and resulting disability or impairment." K.S.A. § 44-508(f)(2)(B). A "prevailing factor" means the "primary factor, in relation to any other factor." K.S.A. § 44-508(g). In addition to compensation for the primary injury, the KWCA compensates injured employees for secondary injuries that are the "natural and probable consequence of the primary injury *and* caused primarily by the work accident." Buchanan v. JM Staffing, L.L.C., 52 Kan. App. 2d 943, 950–51, 379 P.3d 428, 433 (2016) (emphasis in original).

Plaintiffs concede that Bragg received KWCA benefits for at least some of his injuries from the workplace accident. Plaintiffs' Memorandum In Response To Defendant, Big Heart Pet Brands, Inc.'s Motion To Dismiss (Doc. #26) at 15. Even so, plaintiffs argue that that they and Bragg could not have recovered under the KWCA for the injuries alleged in this action because defendants' negligence for delayed and denied medical treatment "occurred outside of the workplace, months after his initial injury, and gradually worsened over time." Id. at 18–19. Specifically, plaintiffs argue that the "prevailing factor" and "superseding cause" for Bragg's hospitalization and death was (1) defendants' failure to provide medical treatment for his workplace injury and (2) his long-term placement on narcotic pain medication. Id. at 19.

The complaint alleges that Bragg had an employment relationship with Big Heart and that he suffered a workplace injury "by accident arising out of and in the course of his employment."

Petition (Doc. #1-1), ¶¶ 23–24.  The complaint also alleges that because of the workplace injury and defendants' "failure to timely authorize and provide medical treatment" for his workplace injuries, Bragg "endured severe conscious pain and suffering *from the time of this incident* until the moment of death"  Id. ¶¶ 61, 75 (emphasis added); see also id., ¶ 78 (Bragg "experienced prolonged physical and mental pain and suffering, disability, loss of income, and medical expenses *from the time of his injury* until the moment of his death") (emphasis added).  The complaint does not explicitly allege that Bragg's workplace accident or some other act was the "prevailing factor" that caused his injuries and death.  The factual allegations of the complaint do not distinguish the primary and secondary injuries from the workplace accident.  As a result, the Court must construe it as alleging that the workplace accident was the "prevailing factor" for all injuries.  While plaintiffs argue that defendants' negligence after the accident was the prevailing factor and superseding cause of Bragg's hospitalization and death, the complaint does not include factual allegations that plausibly support such a theory.  Cf. Logue, 2018 WL 2971746, at *3 (because complaint alleged "work was not the prevailing factor," plaintiff stated claim which exclusive remedy provision did not bar).  The KWCA sets forth a comprehensive statutory scheme which provides various remedies to an employee for both an initial workplace injury and subsequent treatment of such injury.  Accordingly, it bars plaintiffs' negligence claims against Big Heart.

Initially, the KWCA requires an employer "to provide the services of a healthcare provider and such medical, surgical and hospital treatment, . . . as may be reasonably necessary to cure and relieve the employee from the effects of the injury." K.S.A. § 44-510h(a).  If an employee objects that the services of the employer-furnished healthcare provider are unsatisfactory, the Kansas director of worker's compensation may authorize the appointment of another healthcare provider. K.S.A. § 44-510h(b)(1).  Even without approval or filing objection with the worker's

-11-

compensation board, "an employee may consult a healthcare provider of [his or her] choice for the purpose of examination, diagnosis or treatment," and the employer shall be liable for the fees and charges of such provider up to $500. K.S.A. § 44-510h(b)(2). In addition, if an employer knows of an injury and "refuses or neglects to reasonably provide the services of a health care provider," an employee may obtain his own provider and the employer shall be liable for such expenses. K.S.A. § 44-510j(h). The KWCA also prohibits an employer from engaging in fraudulent or abusive acts or practices.[6] Finally, the KWCA compensates workers for pain and suffering if the pain and suffering interfere with [his or her] ability to perform labor." McGranahan v. McGough, 249 Kan. 328, 328, Syl. ¶ 5, 820 P.2d 403, 404, Syl. ¶ 5 (1991). Plaintiffs allege that "Bragg had difficulty working in December 2018 due to his severe pain." Petition (Doc. #1-1), ¶ 55. Accordingly, Bragg could have recovered compensation for pain and suffering under the KWCA.[7]

---

[6]     The KWCA prohibits an employer from denying or attempting to deny payment of benefits by making a false or misleading statement or misrepresenting or concealing a material fact; instructing or encouraging others to violate an employee's right to medical benefits, failing to initiate or reinstate compensation when due if a clear and legitimate dispute does not exist as to the liability of the insurance company, and refusing to pay compensation as and when it is due. K.S.A. § 44-5,120(d)(4)(A)–(B), (d)(13), (d)(16) and (d)(18). If the director of worker's compensation or the insurance commissioner determines that a party has violated one or more of these provisions, the party is subject to various penalties including a monetary penalty up to $2,000 for each violation and an aggregate penalty up to $20,000 in a one-year period. K.S.A. § 44-5,120(g)(1).

[7]     Plaintiffs allege that Bragg invoked his rights and received benefits for his physical injuries under the KWCA, which also establishes that they could have recovered KWCA benefits. Beginning on March 27, 2017, the date of his injury, Bragg received medical treatment. Petition (Doc. #1-1), ¶¶ 25–28, 31, 33–37. In late September and early October of 2018, under the KWCA, counsel for Bragg requested that the director of Kansas worker's compensation authorize appointment of Dr. Fritz for a surgical consultation. Id., ¶ 48. An ALJ scheduled a preliminary hearing for October 4, 2018, but counsel for Bragg cancelled the request after learning that Dr. Bailey had agreed to examine Bragg on October 25, 2018, approximately one month after Dr. Fritz would have been able to see him. Id. In other words, Bragg did not pursue his request under the KWCA to authorize a surgical consultation with Dr. Fritz instead of Dr. Bailey. Likewise, the complaint does not allege that Bragg, his counsel or any medical provider asked Big Heart or the

(continued . . .)

Plaintiffs argue that as Bragg's parents, they had no remedies under the KWCA.  When an injury results in the death of an employee, the KWCA provides compensation for a dependent spouse and children.  K.S.A. § 44-510b(a).  Based on the version of the KWCA which was in effect when Bragg died, if a deceased employee did not have any dependents, the employer was required to pay $25,000 to his legal heirs.  K.S.A. § 44-510b(d) (2017).  Plaintiffs argue that any remedy under the KWCA would have been reduced by the amount of life insurance proceeds that they received on Bragg's life.  Plaintiffs' Memorandum In Response To Defendant, Big Heart Pet Brands, Inc.'s Motion To Dismiss (Doc. #26) at 20 (citing K.S.A. § 44-510b(d) (2017)).  The complaint contains no allegations which suggest that Bragg's parents could not recover damages under K.S.A. § 44-510b(d) or that their damages under the statute would have been reduced.  In any event, plaintiffs do not dispute that they could have recovered KWCA benefits if Bragg's death resulted from a workplace injury.  The fact that Big Heart might offset a portion of those damages with the proceeds of life insurance that it maintained on Bragg's behalf goes to the amount of damages, not whether they were recoverable.  Under the exclusive remedy provision, the Kansas legislature has determined that death benefits under K.S.A. § 44-510b(d) are the sole remedy against an employer for dependents and heirs based on death resulting from a workplace accident.

---

[7](. . . continued)
Kansas director of worker's compensation to authorize surgery with Dr. Bailey or another provider before January 7, 2019, the day that Dr. Bailey had planned to perform the surgery.  Plaintiffs argue that Bragg did not pursue their requests with the ALJ because Big Heart had the right to choose the healthcare provider under K.S.A. § 44-510h(a).  Even so, as explained above, while an employer has the right to choose the initial healthcare provider, the KWCA allows injured employees to challenge that decision, which would include the unavailability of the healthcare provider to provide timely treatment.  See K.S.A. § 44-510h(a) (employer must provide services of healthcare provider and "such medical, surgical and hospital treatment, . . . as may be reasonably necessary to cure and relieve the employee from the effects of the injury"); K.S.A. § 44-510h(b)(1) (if employee objects that services of healthcare provider "unsatisfactory," director may authorize appointment of another healthcare provider).

K.S.A. § 44-501b(d); see also K.S.A. § 44-501e(e) (in case of injury to or death of an employee, where employee or dependents entitled to compensation under KWCA, "such compensation shall be exclusive of all other remedies or causes of action for such injury or death, and no claim or action shall inure, accrue to or exist in favor of the surviving spouse or any relative or next of kin of such employee").[8]

Based on the comprehensive statutory scheme of the KWCA, plaintiffs and Bragg "could have recovered compensation" under the KWCA for Bragg's initial injury and any secondary injuries from treatment including his resulting death. Robinett, 270 Kan. at 97, 12 P.3d at 414. Accordingly, the exclusive remedy provision bars plaintiffs' negligence and negligence per se claims against Big Heart.[9] See id.; see also King v. CompPartners, Inc., 423 P.3d 975, 983–84 (Cal. 2018) (doctor's decision to decertify prescription drug and manner in which doctor communicated that decision fall within scope of statutory process set up by employer to review recommendations concerning treatment of plaintiff's industrial injury; harm plaintiffs allege

---

[8]     Plaintiffs argue that since the 2010 amendments to the KWCA added the "prevailing factor" test, Kansas courts have not addressed whether family members can recover for suicide under the statute. Plaintiffs' Memorandum In Response To Defendant, Big Heart Pet Brands, Inc.'s Motion To Dismiss (Doc. #26) at 18. Because plaintiffs' complaint does not allege that Bragg committed suicide, the Court need not address the issue.

[9]     Plaintiffs suggest that the KWCA exclusive remedy provision violates their due process rights under Section 18 of the Kansas Bill of Rights, which provides that "[a]ll persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law, and justice administered without delay." See Plaintiffs' Memorandum In Response To Defendant, Big Heart Pet Brands, Inc.'s Motion To Dismiss (Doc. #26) at 13–14. The Kansas Supreme Court has rejected this argument because the KWCA provides injured employees an adequate statutory substitute for a common law negligence cause of action. See Rajala v. Doresky, 233 Kan. 440, 441, 661 P.2d 1251, 1253 (1983) (KWCA abrogation of right to bring suit does not violate Section 18 because it provides statutory substitute for certain common law remedies); see also Manzanares v. Bell, 214 Kan. 589, 599, 522 P.2d 1291, 1300–01 (1974) (mandatory no-fault automobile insurance laws do not violate Section 18 attack because viable statutory remedy substituted for common law negligence cause of action).

-14-

therefore "collateral to and derivative" of industrial injury and arose within scope of employment for purposes of workers' compensation exclusive remedy).[10]

B.     Allegations That Defendants Owed Plaintiffs Duty

Defendants argue that plaintiffs have not alleged that they owed Bragg any duty.  Because the KWCA bars plaintiffs' negligence claims against Big Heart, the Court addresses defendants' argument only as to IINA and Gallagher Bassett.

To state a claim for negligence as to each defendant, plaintiffs must allege (1) defendant had a duty of care; (2) it breached that duty; (3) Bragg sustained injury; and (4) a causal connection exists between the duty defendant breached and the injury Bragg suffered.  See Elstun v. Spangles, Inc., 289 Kan. 754, 757, 217 P.3d 450, 453 (2009); see also Siruta v. Siruta, 301 Kan. 757, 766, 348 P.3d 549, 558 (2015) (same elements for wrongful death claim based on negligence).  The existence of a duty is a question of law for the Court.  Yount v. Deibert, 282 Kan. 619, 624, 147 P.3d 1065, 1070 (2006).  Under the liberal notice pleading standards of Rule 8(a), Fed. R. Civ. P., plaintiff must allege sufficient underlying facts from which the Court may find the existence of a duty.  See Sheldon v. Vermonty, 31 F. Supp. 2d 1287, 1296 (D. Kan. 1998) (Rule 8(a) requires plaintiff to allege facts from which court can infer existence of duty); see also Whitney v. New Mexico, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court will not supply additional factual

_____

[10]     Defendants also argue that plaintiffs are equitably estopped from claiming that the medical treatment for Bragg was inadequate because he withdrew two different applications for a preliminary hearing on the issue before a worker's compensation ALJ.  Kansas courts have recognized that the doctrine of equitable estoppel applies in workers compensation cases.  Marley v. M. Bruenger & Co., Inc., 27 Kan. App. 2d 501, 505, 6 P.3d 421, 423–24, rev. denied, 269 Kan. 933 (2000).  Generally, however, when deciding a Rule 12(b)(6) motion to dismiss, the Court may not look beyond the four corners of the complaint.  Dean Witter Reynolds, Inc. v. Howsam, 261 F.3d 956, 960 (10th Cir. 2001), rev'd on other grounds, 537 U.S. 79 (2002).  Because defendants rely on facts beyond the complaint to establish equitable estoppel, the Court declines to address defendants' argument.

allegations to round out plaintiff's complaint).

Plaintiffs argue that under Kansas law, a petition is sufficient to state a negligence claim even if it lacks "allegations sufficient to demonstrate the existence of a duty owed to the plaintiffs." Plaintiffs' Memorandum In Response To Defendant, Big Heart Pet Brands, Inc.'s Motion To Dismiss (Doc. #26) at 22 (quoting Williams v. C-U-Out Bail Bonds, LLC, 310 Kan. 775, 792, 450 P.3d 330, 343 (2019)); Plaintiffs' Memorandum In Response To Defendant, [IINA's] Motion To Dismiss (Doc. #25) at 22; Plaintiffs' Memorandum In Response To Defendant, Gallagher Bassett Services, Inc.'s Motion To Dismiss (Doc. #20) at 21.  As explained above, however, the Court applies federal procedural law, including Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiffs allege generally that all defendants "were negligent in their failure to timely authorize and provide medical treatment for Clinton Bragg, III for his workplace injuries." Petition (Doc. #1-1), ¶ 61; see also id., ¶ 62 (all defendants "were negligent in delaying Clinton Bragg, III's access to medical treatment for his workplace injuries").  Plaintiffs allege a chain of events involving Bragg's medical treatment and claim that he continuously suffered pain from March of 2017 until his death in December of 2018.  They do not allege that any particular defendant owed Bragg a duty of reasonable care or how each defendant breached any such duty.  See Plaintiffs' Memorandum In Response To Defendant, [IINA's] Motion To Dismiss (Doc. #25) at 6 ("chain of events itself constitutes the negligence" of Big Heart, IINA and Gallagher Bassett).

As to IINA, plaintiffs have pled that it contracted with Big Heart to provide worker's compensation insurance.  See Petition (Doc. #1-1), ¶ 18.  Likewise, as to Gallagher Bassett, plaintiffs allege that as a third-party claims administrator, it contracted with IINA to administer the KWCA obligations of Big Heart.  See id., ¶ 19.  Plaintiffs then generally allege that all defendants "were negligent in their failure to timely authorize and provide medical treatment for

Clinton Bragg, III for his workplace injuries." Id., ¶ 61.  Plaintiffs have not alleged or explained how the contract between Big Heart and IINA or the contract between IINA and Gallagher Bassett imposed a duty for IINA or Gallagher Bassett to act with reasonable care toward Bragg.

Plaintiffs argue that as an insurance carrier and third-party administrator, IINA and Gallagher Bassett owe a duty of good faith and fair dealing to the insured.  See Plaintiffs' Memorandum In Response To Defendant, [IINA's] Motion To Dismiss (Doc. #25) at 24 (duty of good faith and fair dealing implied in every contract; KWCA makes insurance carrier "contractual party to [KWCA] provisions"); Plaintiffs' Memorandum In Response To Defendant, Gallagher Bassett Services, Inc.'s Motion To Dismiss (Doc. #20) at 22 (third-party administrators have duty of good faith and fair dealing with workers compensation claimants); id. at 24 (Gallagher Bassett has duties under KWCA as representative of employer and insurer) (citing K.S.A. 44-5,120(b)). Even if Kansas courts recognize such a duty, the duty is a *contractual* duty based on the covenant of good faith and fair dealing, not a duty in *tort* to act with reasonable care.  See Nungesser v. Bryant, 283 Kan. 550, 560, 153 P.3d 1277, 1285 (2007) (negligence action sounds in tort, while action for breach of duty of good faith sounds in contract); see also Wolverton v. Bullock, 35 F. Supp. 2d 1278, 1281 (D. Kan. 1998) (absent allegation of contract between plaintiff and insurance adjustor, adjustor did not owe plaintiff an implied duty to act in good faith).  Accordingly, such a duty cannot form the basis of plaintiffs' negligence claims against IINA and Gallagher Bassett.

Plaintiffs suggest that as a worker's compensation insurer and a third-party administrator, IINA and Gallagher Bassett effectively assumed Big Heart's duties under the KWCA.  But the complaint does not allege that IINA or Gallagher Bassett assumed Big Heart's duties.  Instead, the complaint alleges only that IINA contracted with Big Heart to provide worker's compensation insurance and that Gallagher Bassett had a "contractual agreement" with IINA to provide

adjustment services for IINA's contractual obligations to provide benefits that Big Heart was obligated to provide under the KWCA.  <u>Petition</u> (Doc. #1-1), ¶¶ 18–19.  Plaintiffs' allegations that IINA insured Big Heart and that Gallagher Bassett was a third-party administrator who provided adjustment services for IINA is insufficient to establish that either IINA or Gallagher Bassett owed Bragg a duty to act with reasonable care.

Defendants do not raise the issue, but even if plaintiffs had alleged facts to plausibly show that IINA or Gallagher Bassett owed Bragg a duty in tort to act with reasonable care, they have not pled sufficient facts to establish that either party breached such a duty.  As to IINA, plaintiffs allege that on multiple occasions after September 10, 2018, Bragg alerted IINA of mental health issues that he was experiencing due to his injury.  <u>Id.</u>, ¶ 43.  Plaintiffs also allege that in late November of 2018, IINA authorized surgery for Bragg.  <u>Id.</u>, ¶ 53.  The complaint provides no further factual detail how IINA breached any duty to Bragg or otherwise was involved in approving his medical care.  Likewise, as to Gallagher Bassett, plaintiffs allege that on September 14, it contacted Dr. Bailey to see if he could examine Bragg.  <u>See id.</u>, ¶ 44.  Plaintiffs also allege that Gallagher Bassett informed Dr. Bailey that the treating doctor had recommended a surgical consultation for Bragg.  <u>See id.</u>  The complaint provides no further factual allegations related to how Gallagher Bassett breached any duty to Bragg or otherwise was involved in approving his medical care.  Absent such factual detail, the complaint fails to plausibly show that IINA or Gallagher Bassett breached any duty of care to Bragg.

Because plaintiffs have not alleged that IINA or Gallagher Bassett owed a duty to Bragg or that they had a special relationship with Bragg, such that a duty of reasonable care is implied, they have failed to state a claim for negligence.  Plaintiffs need not state with precision every element of their claim.  Even so, plaintiffs have not alleged facts from which the Court can

plausibly infer that IINA or Gallagher Bassett owed a duty to Bragg under tort law to act with reasonable care.  Accordingly, the Court sustains IINA and Gallagher Bassett's motions to dismiss plaintiffs' negligence claim against them.

      C.     <u>Claim For Bad Faith Refusal To Provide Treatment Against IINA</u>

Plaintiff alleges that IINA exercised "bad faith" because it (1) violated "the covenant to act in good faith and with reasonable care," (2) chose medical treatment for Bragg that "delayed his expected surgery by several weeks or months" and (3) failed to provide Bragg "prompt and meaningful medical treatment under the circumstances."  <u>Petition</u> (Doc. #1-1), ¶¶ 70–72.  IINA argues that plaintiffs have not stated a claim for the tort of bad faith.

Kansas law does not recognize the *tort* of bad faith.  <u>Associated Wholesale Grocers, Inc. v. Americold Corp.</u>, 261 Kan. 806, 845, 934 P.2d 65, 89 (1997); <u>Spencer v. Aetna Life & Cas. Ins. Co.</u>, 227 Kan. 914, 922, 611 P.2d 149, 155 (1980) (except for insurance carrier's duty to insured to defend and settle third-party claims against insured, no Kansas case has found that insurance carrier's lack of good faith in dealings on behalf of insured rises to level of independent tort); <u>see also</u> <u>Osgood v. State Farm Mut. Auto. Ins. Co.</u>, 848 F.2d 141, 144 (10th Cir. 1988) (Kansas law does not recognize tort of bad faith in context of first-party litigation against insurance companies).  Plaintiffs apparently concede that a tort claim for bad faith is not viable.  Plaintiffs argue that because the KWCA is "contractual in nature," however, the Court should find that IINA owed Bragg an implied contractual duty of good faith and fair dealing.  <u>Plaintiffs' Memorandum In Response To Defendant, [IINA's] Motion To Dismiss</u> (Doc. #25) at 24 (quoting <u>Hormann v. N.H. Ins. Co.</u>, 236 Kan. 190, 193, 689 P.3d 837, 840 (1984)).

Even if Kansas law permitted an injured employee to sue a worker's compensation insurance carrier based on the implied covenant of good faith and fair dealing, plaintiffs have not

stated a claim on which relief can be granted.  To prevail on a claim for breach of the covenant of good faith and fair dealing, plaintiffs must "(1) plead a cause of action for breach of contract, not a separate cause of action for breach of duty of good faith, and (2) point to a term of the contract which the defendant allegedly violated by failing to abide by the good faith spirit of that term." Terra Venture, Inc. v. JDN Real Estate Overland Park, L.P., 443 F.3d 1240, 1244 (10th Cir. 2006) (quotation marks and citation omitted).  The covenant of good faith and fair dealing is "derivative in nature in that it does not create or supply new contract terms, but it grows out of existing ones." Id. (quotation marks and citation omitted); see also Nungesser, 283 Kan. at 560, 153 P.3d at 1285 (action alleging breach of duty of good faith sounds in contract); Associated Wholesale Grocers, 261 Kan. at 845, 934 P.2d at 90 (carrier's duty to act in good faith and without negligence arises under contract).  Because plaintiffs do not assert a cause of action for breach of contract or allege a specific contractual term that IINA allegedly violated in bad faith, they have not stated a claim on which relief could be granted.

IINA argues that even if plaintiffs could state a claim based on the implied covenant of good faith and fair dealing, such a claim would not survive Bragg's death.  Plaintiffs do not offer any opposition to IINA's argument.  As explained above, plaintiffs' proposed claim for breach of the implied covenant of good faith and fair dealing sounds in contract.  Nungesser, 283 Kan. at 560, 153 P.3d at 1285.  Kansas law provides for the survival of "causes of action which survive at common law" and "causes of action for mesne profits, or for an injury to the person, or to real or personal estate, or for any deceit or fraud, or for death by wrongful act or omission."  K.S.A. § 60-1801.  At common law, "a cause of action founded on contract survived the death of either party where the breach resulted in a property loss or an injury to a property right."  Price v. Holmes, 198 Kan. 100, 106, 422 P.2d 976, 982 (1967).  Because plaintiffs' claim for breach of the implied

covenant of good faith and fair dealing does not involve a property loss or an injury to a property right, any such claim does not survive Bragg's death.  Accordingly, the Court sustains IINA's motion to dismiss plaintiffs' bad faith claim for this additional reason.

## II.    Statute of Limitations

In the alternative, all defendants argue that the statute of limitations bars plaintiff's claims because they did not file suit until December 18, 2020—more than two years after Briggs first sustained injury from defendants' alleged conduct.  Ordinarily the statute of limitations is an affirmative defense.  The Court may resolve it on a Rule 12(b)(6) motion to dismiss, however, where application of the limitations period is apparent on the face of the complaint.  Aldrich v. McCulloch Props. Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

In diversity cases, the Court applies the statute of limitations which the forum courts would apply to the claims.  See Miller v. Armstrong World Indus., Inc., 949 F.2d 1088, 1089 n.3 (10th Cir. 1991).  The parties agree that the two-year statute of limitations under Kansas law applies here.  See K.S.A. § 60-513(a)(4).  Under Kansas law, a tort action generally accrues at the later of (1) when "the act giving rise to the cause of action first causes substantial injury" or (2) when the "fact of injury becomes reasonably ascertainable to the injured party."  K.S.A. § 60-513(a)(4), (b).

Plaintiffs argue that at the earliest, their cause of action accrued when Bragg was hospitalized on December 19, 2018, and that the statute of limitations does not bar their complaint filed on December 20, 2020.  Defendants argue that plaintiffs' cause of action accrued when they allegedly delayed or denied medical treatment in October and November of 2018, which was more than two years before plaintiffs filed suit.

As explained above, plaintiffs have not alleged a specific duty that each defendant owed Bragg, how each defendant breached that duty or what damages specifically flowed from such a

breach.  Based solely on the allegations in the complaint, the Court cannot determine as a matter of law whether plaintiffs or Bragg could have reasonably ascertained their injuries before his hospitalization and death.  Therefore, the Court declines to address defendants' alternative argument based on the statute of limitations.

IT IS THERFORE ORDERED that Defendant Gallagher Bassett Services, Inc.'s Motion To Dismiss (Doc. #6) filed February 5, 2021 is SUSTAINED.

IT IS FURTHERED ORDERED that Defendant Indemnity Insurance Company Of North America's Motion To Dismiss (Doc. #18) filed February 24, 2021 is SUSTAINED.

IT IS FURTHERED ORDERED that Big Heart Pet Brands, Inc.'s [] Motion To Dismiss (Doc. #22) filed March 11, 2021 is SUSTAINED.

IT IS FURTHERED ORDERED that Defendant Indemnity Insurance Company Of North America And Gallagher Bassett Services, Inc.'s Motion For Leave To File Supplemental Memorandum In Support Of Their Motion To Dismiss Or In The Alternative To File Notice Of Supplemental Authority (Doc. #53) filed August 23, 2021 is OVERRULED.

Dated this 14th day of September, 2021 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge